IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3231-FL

| | | |
|---|---|---|
| PHILLIP JEAN-LAURENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| EUGENE HUNT, JOSHUA HARPER, | ) | |
| JODY WALL, MATTHREW, | ) | |
| TAYLOR and JUSTIN LOY, | ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' second motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 56). Plaintiff responded in opposition to defendants' motion and defendants replied in further support of their motion. In this posture, the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff Phillip Jean-Laurent ("plaintiff") commenced this action by filing complaint August 11, 2023, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983 in connection with his then pending state criminal proceedings. Plaintiff named as defendants Wendell Police Department, Officers Eugene Hunt ("Hunt"), Joshua Harper ("Harper"), Jody Wall ("Wall"), Matthew Taylor ("Taylor"), Justin Loy ("Loy"), as well as Chief William I. Carter ("Carter"), the Wendell Police Department, and the Town of Wendell.

---

[1] The case caption reflects dismissal of formerly named defendants Chief William I. Carter, Wendell Police Department, and Town of Wendell by separate order entered March 1, 2024.

Following a period of discovery, and in accordance with the court's case management order, defendants filed the instant motion for summary judgment April 30, 2025, arguing plaintiff's claims fail as a matter of law and defendants are entitled to qualified immunity. In support, defendants rely upon a statement of material facts and appendix[2] of exhibits comprising the following: 1) declarations from defendants Hunt, Harper, Loy, and Wall; 2) Wendell Police Department reporting officer narrative and supplemental report; 3) magistrate orders for plaintiff's criminal charges; 4) Wendell Police Department documentation in connection with the search warrant; and 5) plaintiff's deposition transcript. Plaintiff responded in opposition to the instant motion stating that he is relying upon the memorandum of law, statement of material facts, and appendix he submitted in response to defendants' previously filed motion for summary judgment. Plaintiff's appendix is comprised of the following exhibits: 1) dismissal of assault with a deadly weapon charge; 2) documentation related to the search warrant; 3) inventory of seized property; 4) firearm evidence photographs; 5) excerpts from the trial transcript for <u>North Carolina v. Clayton</u>, Nos. 22CR279787 and 280070;[3] 6) criminal judgment in <u>North Carolina v. Clayton</u>, Nos. 22CR279787 and 280070; and 7) the Wendell Police Department documentation for criminal file 22-000361. Defendants replied in further support of their motion.

**STATEMENT OF FACTS**

Except as otherwise noted below, the facts in the light most favorable to plaintiff are as follows. In August 2022, plaintiff moved to Wendell, North Carolina and rented a room in a boardinghouse located at 320 Paula Street. (Defs' SOMF (DE 57) ¶ 1). Plaintiff's private space

---

[2] Defendants rely upon the appendix they filed in connection with their first motion for summary judgment. <u>See</u> (DE 48).
[3] The exhibit labeled exhibit H is blank.

at the boardinghouse was limited to his bedroom, which locked with a keypad. (Id. ¶ 2). The kitchen and other living spaces were all common areas. (Id.)

On August 26, 2022, plaintiff had a disagreement with one of his roommates over money plaintiff believed the roommate had stolen from him. (Id. ¶ 3; Pl.'s SOMF ¶ 1). Adophus Thomas Giles ("Giles") and Lorenzo Johnson ("Johnson") left the house and called 911 to report plaintiff had threatened them with a sawed-off shotgun. (Defs' SOMF ¶ 4; Pl.'s SOMF ¶¶ 1, 2). Defendants Hunt, Harper, Wall, and Loy responded to the boardinghouse to investigate the complaint.[4] (Defs' SOMF ¶ 5). When the officer defendants approached the boardinghouse, plaintiff was still inside. (Id. ¶ 7). The officer defendants did not know plaintiff's location within the house, or the location of the reported shotgun. (Id.) The officer defendants believed plaintiff was armed and dangerous. (Id. ¶ 8). Plaintiff was not aware that the Wendell Police Department officers were at the boardinghouse to investigate the complaint regarding the shotgun. (Pl.'s SOMF ¶ 5).

Defendants Hunt and Harper entered the house through the back door with guns drawn and instructed plaintiff to come outside. (Defs' SOMF ¶ 9). Defendants Hunt and Harper then handcuffed plaintiff and detained him on the patio. (Pl.'s SOMF ¶ 7). While plaintiff was detained on the back deck of the boardinghouse, defendants Loy and Wall conducted a protective sweep of the common areas of the boardinghouse to make sure no threats remained inside. (Defs' SOMF ¶ 10). The officers did not know whether anyone was still inside the house or the location of the shotgun. (Id.) The officers did not enter plaintiff's bedroom. (Id.) The officers ignored plaintiff's protest that they acquire a lawful warrant prior to conducting a warrantless search and placed plaintiff inside the back of a police vehicle. (Pl.'s SOMF ¶ 8). According to defendants, no persons, weapons, or other contraband were found during the protective sweep. (Defs' SOMF ¶¶

---

[4] Defendant Taylor did not respond to the boardinghouse on the night of plaintiff's arrest. (Defs' SOMF ¶ 21). Taylor's role was limited to reviewing reports. (Id.)

11, 17).  Plaintiff, however, maintains the officers recovered a 12-guage Mossberg shotgun in the course of the search.  (Pl.'s SOMF ¶ 9).

Defendant Hunt transported plaintiff to the Wake County Detention Center (the "detention center").  (Defs' SOMF ¶ 12).  At the detention center, defendant Hunt appeared before Magistrate Lauren May to provide information purporting to establish probable cause for plaintiff's arrest on the charges of assault with a deadly weapon in violation of N.C. Gen. Stat. § 14-33(C)(1) and resisting a public officer in violation of N.C. Gen. Stat. § 14-223.  (Defs' SOMF ¶ 13; Pl.'s SOMF ¶¶ 11, 12).  Hunt described the weapon at issue as a "12-guage Mossberg Shotgun."  (Defs' SOMF ¶¶ 13, 14; Pl's SOMF ¶ 12).  Defendant Hunt states in his declaration that he believes Giles or Johnson described the shotgun as a "Mossberg."  (Defs' SOMF ¶ 14). After plaintiff was processed at the detention center, defendant Hunt returned to the Wendell Police Department to prepare an application for a warrant to search 320 Paula Street.  (Id. ¶ 15).  In the search warrant application, defendant Hunt swore under oath that he had probable cause to believe there was a firearm at 320 Paula Street residential property which plaintiff retrieved from his room and used to intimidate Giles and Johnson during an argument.  (Pl.'s SOMF ¶ 16).  Another magistrate issued the search warrant.  (Defs' SOMF ¶ 15).

Defendants Hunt, Harper, and Wall executed the search warrant at 320 Paula Street.  (Defs' SOMF ¶ 16).  The search resulted in a Mossberg shotgun being found in the bed of a pickup truck parked in the backyard of the boardinghouse.  (Id.)  A criminal background check revealed plaintiff had previously been convicted of a felony, which plaintiff admits.  (Id. ¶ 18).  A check of the shotgun's serial  number revealed that it had previously been stolen.  (Id. ¶ 19).  Plaintiff then was charged with possession of a stolen firearm in violation of N.C. Gen. Stat. § 14-71.1 in case number

22CR279787 and possession of a firearm by a felon in violation of N.C. Gen. Stat. § 14-415.1 in case number 22CRS280070.  (Id. ¶ 20).

On October 7, 2022, Assistant District Attorney Rachel Matthews entered a voluntary dismissal of plaintiff's charge for assault with a deadly weapon.  (Pl.s' SOMF ¶ 23).  On August 17, 2023, after a jury trial in the Wake County Superior Court, a jury found plaintiff not guilty of possession of a stolen firearm and possession of a firearm by a felon, but guilty of resisting a public officer.  (Defs' SOMF ¶ 22; (Pl.'s SOMF ¶ 83); (DE 52-9), p. 4).  Plaintiff did not appeal his conviction.  (Defs' SOMF ¶ 23).

**DISCUSSION**

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[5]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome

---

[5] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

5

of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.     Analysis

1.     Plaintiff's False Arrest, False Imprisonment, and Malicious Prosecution Claims

Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution are evaluated under the Fourth Amendment. See English v. Clarke, 90 F.4th 636, 645–46 (4th Cir. 2024); see also Manuel v. City of Joliet, Ill., 580 U.S. 357, 367 (2017) ("If the complaint is that a

form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) ("[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, and not the more generalized notion of substantive due process, must be the guide for analyzing these claims."); Smith v. Travelpiece, 31 F.4th 878, 885 (4th Cir. 2022) ("Dressing a Fourth Amendment claim up in due process language does not transform it into a Fourteenth Amendment claim.").

To prove false arrest, malicious prosecution, or false imprisonment, a plaintiff must demonstrate that the search or seizure was made without probable cause. See English, 90 F.4th at 645–46; Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014). "Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." District of Columbia v. Wesby, 583 U.S. 48, 57 (2018). Probable cause exists when "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." English, 90 F.4th at 646. "Warrants and indictments usually conclusively determine the existence of probable cause, but not when an officer deliberately supplied misleading information that influenced the judge's or grand jury's decision." English, 90 F.4th at 648; see also Gerstein v. Pugh, 420 U.S. 103, 117 n.19 (1975) ("[A]n indictment, fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause."); Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) ("[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant.").

7

The court begins with plaintiff's challenge to the warrantless protective or security[6] sweep of the boardinghouse. "When police officers make an arrest at a home, they are entitled to perform a further protective sweep of the house when they have articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." United States v. Luadermilt, 677 F.3d 605, 610 (4th Cir. 2012) (citing Maryland v. Buie, 494 U.S. 325, 334 (1990)); United States v. Everett, 91 F.4th 698, 709 (4th Cir. 2024) ("[A protective] sweep can be justified when law officers have an interest "in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack."); United States v. Jones, 667 F.3d 477, 482 (4th Cir. 2012) (discussing protective sweep doctrine).

Here, defendants present uncontradicted evidence that they had reason to believe additional people were in the boardinghouse who may have presented a risk to the officers or safety. (Defs' SOMF ¶¶ 4, 7, 8, 10); see Everett, 91 F.4th at 709; Jones, 667 F.3d at 485 (upholding protective sweep where "a reasonably prudent officer would suspect that there were other individuals in the . . . residence" ); see also id. at 485 n.10 (noting that protective sweep is permissible even if the arrest itself takes place just outside the residence). In particular, the officers knew that plaintiff was not the only person with access to the boardinghouse, that plaintiff's roommates had reported that plaintiff had threatened them with a shotgun, and that the location of the shotgun was unknown. (Defs' SOMF ¶¶ 4, 7, 8, 10). Based upon the foregoing, the court finds the protective sweep was justified.

---

[6] The court will hereinafter refer to the search as the protective search.

Plaintiff also asserts the searches of the boardinghouse violated the Fourth Amendment because the officer defendants recovered the Mossberg shotgun before applying for the search warrant and withheld that information from the magistrate. Plaintiff bases this assumption on the fact that the charging document for the assault charge mentions a Mossberg shotgun, but the affidavit in support of the search warrant does not. Accordingly, plaintiff speculates that the Wendell Police Department must have recovered the shotgun prior to applying for the search warrant and later returned to the property to stage the discovery of the Mossberg shotgun during the execution of the search warrant. Defendant Hunt, however, explains that he provided the magistrate with description of the weapon as a Mossberg shotgun in support of probable cause for the assault charge because either Giles or Johnson described the weapon as a Mossberg shotgun. (Defs' SOMF ¶ 14). Plaintiff alternatively speculates that "one of the individuals [who] called the police on [him] gave the police officer the [stolen] gun." ((DE 48-5), p. 33).

Here, the record reflects that no persons, weapons, or contraband were recovered during the protective sweep of the boardinghouse and there is no evidence the officer defendants conducted any other search of the property before applying for the search warrant. (Defs' SOMF ¶ 11). Plaintiff has presented no evidence to the contrary. Rather, plaintiff relies upon his speculative alternative theories that a weapon was discovered prior to the execution of the search warrant. But plaintiff's speculative assertions do not create a genuine dispute of material fact on this claim. Lovelace, 681 F.2d at 241 (4th Cir. 1982). The officers had probable cause, derived from the search of the boardinghouse pursuant to a warrant, to support the possession charges. Moreover, it is undisputed that plaintiff is a convicted felon and that the shotgun found at the boardinghouse had been reported stolen. (Defs' SOMF ¶¶ 18-19). Thus, there was probable cause to arrest plaintiff on the possession charges.

The court next determines whether the officer defendants had probable cause to arrest plaintiff for assault with a deadly weapon and resisting a public officer. Under North Carolina law, threatening a person with a gun constitutes assault with a deadly weapon. N.C. Gen. Stat. § 14-33(c)(1). Upon arriving at the boardinghouse, defendants Hunt, Harper, Wall, and Loy spoke with Johnson and Giles outside and the witnesses told the officers plaintiff had threatened them with a shotgun. (Defs' SOMF ¶ 6). The victim's identification of his attacker is sufficient to establish probable cause. See English v. Clarke, 90 F.4th 636, 646-47 (4th Cir. 2024); Torchinsky v. Siwinski, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker."). Under these facts and circumstances, a reasonable officer would have probable cause to believe plaintiff had committed assault with a deadly weapon.

As for plaintiff's resisting a public officer charge, he was convicted of the charge and did not file an appeal. (Defs' SOMF ¶¶ 22-23). Defendants argue plaintiff's claims for false arrest, false imprisonment, and malicious prosecution related to his arrest and prosecution for resisting a public officer are barred by Heck because his allegations necessarily imply the invalidity of his conviction. To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, the plaintiff must show that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. 477, 486–87 (1994). The Supreme Court later clarified that section 1983 actions are barred, no matter the relief sought, "if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005). In Wilkinson, the Court again

10

emphasized that habeas corpus was the exclusive remedy for prisoners who "seek to invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id. at 81–82.

Plaintiff was convicted of resisting a public officer and he has not shown that his conviction or sentence has been overturned or otherwise invalidated.[7] Plaintiff, additionally, has not alleged any valid grounds for challenging his arrest for resisting a public officer. A finding in plaintiff's favor as to his claims for false arrest, false imprisonment, and malicious prosecution in connection with his arrest and prosecution for resisting a public officer would necessarily imply the invalidity of his conviction. Thus, plaintiff's claims for false arrest, false imprisonment, and malicious prosecution related to his arrest and prosecution for resisting a public officer are barred by Heck. See Covey v. Assessor of Ohio County, 777 F.3d 186, 197 (4th Cir. 2015); see also Garcia v. Enzor, No. 3:21-01359-MGL, 2022 WL 3655236, at *2 (D.S.C. Aug. 25, 2022) (finding plaintiff's claims for false arrest and imprisonment were directly related to his conviction and a favorable determination of these claims would imply the invalidity of his conviction), aff'd, 2024 WL 1366578 (4th Cir. 2024).

To the extent plaintiff attempts to invoke the doctrine of res judicata against defendants in connection with the dismissal of his assault with a deadly weapon charge, he may not do so in this

---

[7]     However, the Fourth Circuit has explained that there are circumstances where a section 1983 claim bearing some relationship to a valid criminal judgment might not be barred by Heck. A section 1983 claim based on an alleged unlawful search does not necessarily imply the invalidity of a conviction or sentence if "(1) the conviction derives from a guilty plea rather than a verdict obtained with unlawfully obtained evidence and (2) the plaintiff does not plead facts inconsistent with guilt." Covey v. Assessor of Ohio Cty., 777 F.3d 186, 197 (4th Cir. 2015). Additionally, claims for false arrest do not of themselves necessarily call into question the validity of a conviction. See Brooks v. City of Winston-Salem, 85 F.3d 178, 182 (4th Cir. 1996) ("[A] charge that probable cause for a warrantless arrest was lacking, and thus that the seizure was unconstitutional, would not necessarily implicate the validity of a subsequently obtained conviction— at least in the usual case."); see also Dizzley v. Garrett, 836 F. App' x 157, 158 (4th Cir. 2021) ("A claim for false arrest . . . does not by its nature call into question the validity of a conviction."); cf. Gerstein, 420 U.S. at 119 ("[A] conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause.").

11

§ 1983 action.  See Haring v. Prosise, 462 U.S. 306, 316 (1983); United States v. Tatum, 943 F.2d 370, 382 (4th Cir. 1991); McCoy v. Hermandez, 203 F.3d 371, 375 (5th Cir. 2000) ("[A] § 1983 plaintiff may not invoke the doctrine of collateral estoppel against officers following a favorable ruling in a prior criminal proceeding.").  Based upon the foregoing, there is no Fourth Amendment violation and defendants are entitled to qualified immunity.  The court grants defendants' motion for summary judgment as to plaintiff's Fourth Amendment claims.

2.      Plaintiff's Abuse of Process Claim

Plaintiff contends his alleged warrantless arrest and imprisonment lead to "malicious abuse of process[.]"  (DE 1) at1).  Among other requirements, an abuse of process claim requires evidence showing defendants "had an improper, ulterior motive for arresting [plaintiff] and instituting criminal proceedings against him."  Cramer v. Crutchfield, 648 F.2d 943, 946 (4th Cir. 1981); see also  Ballock v. Costlow, 430 F. Supp. 3d 146, 159 (N.D.W. Va. Dec. 23, 2019).  Here, the court has determined that the searches of the boardinghouse did not violate the Fourth Amendment and that plaintiff's criminal charges were supported by probable cause.  Plaintiff has presented no evidence that he was criminally charged for a purpose outside of the criminal process.  See Cramer , 648 F.2d at 946.  Accordingly, plaintiff cannot establish a claim for abuse of process, and defendants' motion for summary judgment is granted as to this claim.

3.      Plaintiff's Claim for Failure to Intercede

Plaintiff alleged a failure to intercede claim against defendant Taylor.  An officer may be liable under § 1983 for failure to intercede where he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  Randall v. Prince George's County, Md., 302 F.3d 188, 204 (4th Cir. 2002).  Where, as here, there is no underlying constitutional violation, the associated claim for

failure to intercede also fails.  See Hinkle v. City of Clarksburg, West Va., 81 F.3d 416, 420-21 (4th Cir. 1996).  Because there is no underlying constitutional violation, plaintiff cannot establish a claim for failure to intercede against defendant Taylor.  Thus, defendants' motion or summary judgment is granted as to this claim.

    4.      Plaintiff's Claim for Conspiracy

Plaintiff alleges defendants Hunt, Harper, Loy, Taylor, and Wall conspired to "fabricate the finding of evidence with which to cause [his] re-arrest[.]"  ((DE 1) ¶ 42).  To establish a civil conspiracy, a plaintiff "must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right . . . ."  Hinkle, 81 F.3d at 421.  Conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element and therefore fail to state a claim.  Id. at 421-23; Miller v. Demarino, No. Civ. 1:01CV183, 2002 WL 32096597, at * 3 (N.D.W. Va. Apr. 24, 2002) (finding that naked assertions of a conspiracy are not sufficient to support an action pursuant to 42 U.S.C. § 1983), aff'd, 45 F. App'x 292 (4th Cir. 2002).  Rather, a plaintiff "must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective."  Hinkle, 81 F.3d at 421.   Plaintiff failed to present evidence reflecting a "meeting of the minds" between any defendants.  Thus, defendants' motion for summary judgment is granted as to this claim.

    5.      Plaintiff's Evidence Fabrication Claim

Plaintiff asserts defendants Hunt, Harper, Wall, Loy, and Taylor fabricated evidence against him by pretending to find the shotgun when they searched the boardinghouse pursuant to the search warrant.  A claim for fabrication of evidence pursuant to the Fourteenth Amendment to the United States Constitution has three elements:  "(1) that officers fabricated or omitted material

evidence; (2) that [the plaintiff] suffered a loss of liberty; and (3) that the loss of liberty was caused by the fabricated evidence." Harris v. Town of S. Pines, 110 F.4th 643, 645 n.6 (4th Cir. 2024); Massey, 759 F.3d at 354.

As discussed in further detail above, plaintiff failed to present any evidence that any member of the Wendell Police Department found the shotgun before applying for the search warrant. There, additionally, is no evidence that any weapon was found during the protective sweep of the boardinghouse. Plaintiff's conclusory allegations of fabrication of evidence are insufficient to defeat a properly supported motion for summary judgment. See Matsushita Elec. Industrial Co. Ltd., 475 U.S. at 587; Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the non-moving party's] case.") (citation omitted). Thus, defendants' motion for summary judgment is granted as to this claim.

6. Plaintiff's Remaining State Law Claims

Turning to plaintiff's state law claims, the court "may decline to exercise supplemental jurisdiction over a [state] claim if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Thus, any state law claims are dismissed without prejudice to bring such claims in state court.

14

**CONCLUSION**

Based on the foregoing, defendants' second motion for summary judgment (DE 56) is GRANTED. Any state law claims are dismissed without prejudice to asserting same in state court. The clerk is DIRECTED to amend the court's caption to reflect that the full names for defendants Joshua Harper, Jody Wall, Matthew Taylor, and Justin Loy, and to close this case.

SO ORDERED, this the 28th day of May 2026.

_____
LOUISE W. FLANAGAN
United States District Judge